ADRIA MM PRODUCTIONS, LTD.,

       Plaintiff,

vs.

WORLDWIDE ENTERTAINMENT GROUP, INC.,

       Defendant.

_____/

WORLDWIDE ENTERTAINMENT GROUP, INC.,

       Counterclaimant,

v.

ADRIA MM PRODUCTIONS, LTD.,

       Counter-defendant.

_____/

## ORDER DENYING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff/Counterclaim Defendant Adria MM Productions, Ltd., a Croatian company, and Defendant/Counterclaim Plaintiff Worldwide Entertainment Group, Inc., a Miami-based company, entered into a five-year Promotional Agreement for the production of "Ultra Europe" musical festivals in Croatia. Pursuant to the Agreement, Worldwide Entertainment granted Adria Productions the right to use certain "Ultra" trademarks in Croatia and Europe to promote an "Ultra" event, in exchange for licensing and promotional fees. After Worldwide Entertainment revoked the Agreement for alleged material breaches, Adria Productions filed suit, claiming that the Agreement was void. In response, Worldwide Entertainment filed a countersuit, claiming that, among other things, Adria Productions breached the contract entitling Worldwide Entertainment to damages. Both parties moved for summary judgment. Adria Productions moved

for partial summary judgment on its claim for declaratory judgment and Worldwide Entertainment's corresponding claims for breach of contract. Worldwide Entertainment moved for summary judgment on all of Adria Productions's claims and all of its counterclaims.

THE COURT has considered the motions, the responses, the replies, the pertinent portions of the record, and being otherwise fully advised in the premises, it is adjudged that for the reasons stated below, the motions for summary judgment are **DENIED**.

## I.    BACKGROUND

Defendant Worldwide Entertainment is a Florida corporation that promotes and organizes musical events, including Ultra Musical Festival, an outdoor electronic musical festival that takes place annually in Miami, Florida. Ultra was founded in 1999 and since then has continued to expand globally. Worldwide Entertainment is an official licensee and sub-licensor of certain trademarks bearing the "Ultra" name and logo, as well as other intellectual property. To grow the "Ultra" brand, Worldwide Entertainment has entered into various licensing agreements for the use of "Ultra" proprietary marks in numerous countries. Worldwide Entertainment entered into one such agreement with Adria MM Productions, Ltd.

Plaintiff Adria Productions is a Croatian company that promotes musical events in Croatia. On November 2, 2012, Adria Productions and Worldwide Entertainment entered into a five-year Promotional Agreement, as amended on December 5, 2013, whereby Worldwide Entertainment granted Adria Productions the right to use certain "Ultra" trademarks in Croatia and Europe to promote an "Ultra" event in Croatia, in exchange for licensing and promotional fees. More specifically, the Agreement states:

> Ultra hereby grants to AMM, during the Term of this Agreement, the non-exclusive and limited right to use, in the Territory, those certain Proprietary Marks, namely "***Ultra Europe,*** " ***Ultra Europe: Croatia*** – **Split/Hvar Edition,**" "***Road to Ultra,***" Ultra's

distinctive "U" device logo or any other mark deemed appropriate
by Ultra for time to time.

The Territory, as defined in the Agreement, is (1) exclusively Croatia, and (2) non-exclusively Europe.

Adria Productions hosted and promoted its first Festival in Croatia in 2013. Adria Productions continued to do so in 2014, 2015, and 2016. The Agreement was set to expire in November 2017. Before the expiration of the original Agreement, Worldwide Entertainment proposed a new five-year exclusive license agreement. Before the parties could enter into a new agreement, on March 3, 2017, Worldwide Entertainment sent Adria Productions a Notice of Continuing Default ("the Notice"), listing Adria Productions's various breaches and demanding that it cure. The breaches alleged included (1) "failure to timely remit the Promotional Fee. . .for the 2017 event," (2) "failure to remit travel deposits," (3) "unauthorized holding of, and participation in, press conferences. . .and the unauthorized use of certain of Ultra's Proprietary Marks in conjunction therewith," (4) failure to assign or otherwise relinquish all "Ultra" related intellectual property rights, unauthorized publication of non-public information, and (5) other violations that caused "financial and reputational injury."

As per the Agreement, Adria Productions had "5 calendar days to cure" the breach. If Adria Productions failed to cure, Worldwide Entertainment then had "the right, without further notice or demand, to avail itself of any and all legal and equitable remedies, including (a) to immediately terminate this Agreement and/or (b) to retain any and all monies remitted to [Worldwide Entertainment] or any of its subsidiaries or affiliates for any reason, including but not limited to Promotional Fees as liquidated damages (and not as a penalty)." Adria Productions did not respond to the default. On March 8, 2017, following the expiration of the cure period, Worldwide Entertainment dispatched a Revocation of Grant of Rights to Adria Productions,

revoking all the rights granted to and/or conferred upon Adria Productions by Worldwide Entertainment, pursuant to Section 2 of the Agreement. Shortly thereafter, Adria Productions discovered that Worldwide Entertainment had never formally registered the proprietary marks licensed in the Agreement in Croatia or Europe, and brought suit against Worldwide Entertainment. Worldwide Entertainment countersued Adria Productions for its breach of the Agreement.

Five days after Adria Productions filed this lawsuit, both parties applied for registration of the subject marks within 34 minutes of each other— Adria Productions applied in Croatia, Worldwide Entertainment applied in the European Union. Worldwide Entertainment applied for the mark "Ultra Europe" and other marks with the European Union Intellectual Property Office at 1:26 PM. Adria Productions applied for "Ultra Europe" and other marks with the State Intellectual Property Office in Croatia at 2:00 PM. Both parties opposed each other's filings. To date, there has been no adjudication on the outcome of the either party's opposition.

The parties disagree as to the validity of the Agreement, and both parties have filed motions for summary judgment. Adria Productions is seeking partial summary judgment as to Adria Productions's Count VIII (declaratory judgment) and as to Worldwide Entertainment's Counts I (breach of contract, damages), II (breach of contract, injunction), and IV (unjust enrichment); alternatively, Adria Productions is asking this Court for a declaration of certain material facts. Worldwide Entertainment is seeking summary judgment in its favor on all of Adria Productions's claims and all of Worldwide Entertainment's counterclaims. As explained below, the parties' motions for summary judgment are **DENIED** as the Court cannot reach the legal conclusions at the summary judgment stage based on the facts as presented.

## II. <u>LEGAL STANDARD</u>

Summary judgment is authorized where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The non-movant must present more than a scintilla of evidence in support of the non-movant's position. A jury must be reasonably able to find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

## III.   ADRIA PRODUCTION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Adria Productions seeks summary judgment on its claim for declaratory relief (Count VIII), arguing that the Agreement is void for lack of consideration. Because Adria Productions believes that the Agreement is void, Adria Productions accordingly also seeks summary judgment on Worldwide Entertainment's breach of contract (Counts I and II) and unjust enrichment (Count IV) claims, which are reliant on the validity of the contract. Alternatively, Adria Productions requests that the Court declare that Worldwide Entertainment (1) had no rights to the purportedly licensed marks at any relevant time; and (2) nevertheless held itself out to be the owner of the purportedly licensed marks.

For the reasons stated below, the Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

### A.   Validity of the Promotional Agreement

As a threshold matter, this Court must decide whether the Promotional Agreement is

valid or void. Before deciding the validity of the Agreement, however, the Court must determine the applicable law. It is undisputed that the language of the Agreement states that it is subject to Florida law. *See* Promotional Agreement, at 21-22 ("This Agreement shall be construed and governed under the laws of the United States, specifically, the State of Florida, notwithstanding conflicts of law principles or the doctrine of forum non-conveniens."). However, Adria Productions argues that, for purposes of this particular dispute, Croatian and European laws apply under the "territoriality doctrine," which recognizes a trademark "as having a separate existence in each sovereign territory in which it is registered or legally recognized as a mark." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, No. 17-7075, 2018 WL 3894587, at *8 (D.C. Cir. Aug. 10, 2018) (citing J. McCarthy, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 29:1 (5th ed. 2018)). Worldwide Entertainment disagrees, arguing that the Agreement and its choice of law provision control. Both parties are correct.

Worldwide Entertainment is correct that Florida law governs the Agreement. But Florida, as part of the United States, is subject to the "territoriality doctrine." Each law will thus be applied where appropriate to the Court's analysis—i.e., to the extent that construction of the Agreement is being disputed, Florida law will apply; but to the extent that the ownership of the Marks is being disputed, the "territoriality doctrine" will apply.

### 1.    Consideration

Under Florida law, "a contract is made when three elements are present: offer, acceptance, and consideration." *Britt Green Trucking, Inc. v. FedEx Nat'l LTL, Inc.*, 511 Fed. Appx. 848, 851 (11th Cir. 2013). "A promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do." *Id.* By entering into the Agreement, Adria Productions agreed to pay Worldwide Entertainment a

promotional fee in exchange for the license to use Worldwide Entertainment's proprietary marks to produce and promote an Ultra Europe in Croatia. Worldwide Entertainment had not formally registered the Marks in Croatia or with the European Union at the time the parties entered into the Agreement—which Worldwide Entertainment does not dispute. Because Worldwide Entertainment lacked formal registration abroad, Adria Productions argues that Worldwide Entertainment was not capable of licensing or assigning the Marks to Adria Productions under the Agreement. Because the "Grant of Rights" in the Marks was the *consideration* that Worldwide Entertainment was required to provide under the terms of the Agreement, Adria Productions now contends it is void for lack thereof. The Court concludes that it cannot make these findings at the summary judgment stage.

### 2.    Croatia

Unlike the United States, which is a first-to-use country (i.e., trademark priority is afforded to the first to use a mark in commerce), Croatia is a first-to-file country. § 38:5. Who may apply, 1 Trademarks Throughout the World § 38:5. According to Article 4 of the Croatia Trademarks Act as Amended, trademark priority is afforded to the first person or entity to file for registration of the trademark in the Republic of Croatia. *Id.* Because Worldwide Entertainment had not formally registered the trademarks in Croatia, Adria Productions argues that Worldwide Entertainment could not license them for use there. But this argument falls short. With respect to consideration, Worldwide Entertainment argues mainly that it has conferred benefits upon Adria Productions separate and apart from use of the actual Marks, including "support and know-how in the planning and execution of numerous events, use of the "Ultra" domain names, Twitter handles, Instagram pages, Facebook pages, and marketing of the events around the world, access to talent, talent booking, and the use of Worldwide Entertainment's intellectual property throughout the entire term of the Agreement." Worldwide Entertainment believes that these

benefits constitute consideration, such that even if Worldwide Entertainment did not have the authority to license the rights to Adria Productions for use in Croatia, the Agreement is still valid. While the Court recognizes that these benefits are relevant, the analysis in fact turns on a passing reference to Worldwide Entertainment's rights for "well-known" marks arising under the Paris Convention for the Protection of Industrial Property ("the Paris Convention").[1]

Worldwide Entertainment references the Paris Convention as a means of arguing that the "territoriality doctrine" does not apply. In that respect, the Court disagrees and instead finds that the Paris Convention applies and arises under application of the "territoriality doctrine," as it is part of the law of the territory at issue—Croatia. But that fact notwithstanding, the Paris Convention serves a much more significant purpose in this dispute. Under the "territoriality doctrine" the Court must look to Croatia to determine the ownership of the Marks. Adria Productions rightfully notes and cites to the law in Croatia, which states that "[o]wners of trademarks have no rights absent registration and may not file lawsuits to protect their rights under the Trademark Law." § 38:30.Status of unregistered trademarks, 1 Trademarks Throughout the World § 38:30. But Adria Productions conveniently fails to quote the next sentence of the treatise, which states that "owners of unregistered marks may file a lawsuit in court to protect their rights under the Unfair Competition Law and Article 6*bis* of the Paris Convention." *Id.* The Paris Convention, to which Croatia is a signatory, affords protection (albeit more limited in scope than the protection for registered marks) to those marks that are considered "well-known." § 38:7.Not registrable; protection for well-known marks, 1 Trademarks Throughout the World § 38:37. To the extent that a party can avail itself of the protections

---

[1] The parties subsequently further addressed the issue of whether the marks are "well-known" under the Paris Convention in Adria Productions's motion in *limine* to preclude evidence that Worldwide Entertainment's marks are "well-known" and in Worldwide Entertainment's opposition thereto.

provided by the "well-known" marks doctrine, the Eleventh Circuit has labeled this right "use" protection. *See Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1177 (11th Cir. 1994).

In *Babbit*, an almost identical dispute arose—defendant licensed the rights to use their trademarks to plaintiff in several South American countries in which it had not formally registered those marks. *Id.* at 1165-66. Like here, plaintiff argued that because defendant did not actually own the marks in South America, it could not license them to plaintiff for use there. *Id.* But the court disagreed, finding that to the extent defendant had the right to bring a lawsuit under the Paris Convention for protection of the marks, it had a right to those marks that it could legally license. *Id.* In so finding, the court recognized that there is a legal distinction between "use" protection and trademark registration—while a party can formally register a trademark, its abstention from exercising its right to protect an unregistered mark abroad is also a cognizable legal right. *Id.*

Here, the Agreement states that Worldwide Entertainment "grants to AMM. . .the non-exclusive and limited right to use, in the Territory" the Marks, and that "[a]ll marks used, registered, or to be registered in the Territory. . .shall be the exclusive property of Ultra." The Agreement itself does not state that Worldwide Entertainment has "formally registered" the Marks—nor does Worldwide Entertainment claim to have done so—but instead uses the phrase "owned or used." As such, even though Adria Productions hand-waves the argument in its briefs[2], to the extent that Worldwide Entertainment can prove that the Marks qualify as "well-known" marks under the Paris Convention in Croatia, Worldwide Entertainment's right to "use" protection endows it with the right to license the Marks to Adria Productions. Put differently,

---

[2] In its Reply to Worldwide Entertainment's Opposition to Adria Productions's Motion for Partial Summary Judgment, Adria Productions states that this argument amounts to Worldwide Entertainment stating: "We don't currently have rights to the Marks, but we might be able to bring a lawsuit, and we might be able to get those rights." While Adria Productions attempts to make light of this argument, it is in fact the case.

Worldwide Entertainment's abstention from filing a lawsuit in Croatia against Adria Productions for unauthorized use of the Marks would be valid *consideration* because it is "[a] promise. . .to do something that. . .[ Worldwide Entertainment] was not already obligated to do." *Britt Green Trucking, Inc.*, 511 Fed. Appx. at 851.

When assessing whether a mark is well-known, such that it should receive protection in Croatia, the trademark office considers the criteria established by the Joint Recommendation of the World Intellectual Property Organization concerning provisions on the protection of well-known marks, which include the following: "(1) the degree of knowledge or recognition of the mark in the relevant sector of the public; (2) the duration, extent and geographical area of any use of the mark; (3) the duration, extent and geographical area of any promotion of the mark, including advertising and the presentation, at fairs or exhibitions, of the goods and/or services to which the mark applies; (4) the record of successful enforcement of rights in the mark; and (5) the value associated with the mark." § 38:7.Not registrable; protection for well-known marks, 1 Trademarks Throughout the World § 38:37. Although Adria Productions disputes that Worldwide Entertainment can avail itself of "use" protection because it has failed to demonstrate that the Marks are "well-known," the Court believes that it is likely that Worldwide Entertainment can do so. That said, the record evidence does not reflect that the criteria has been adequately analyzed.[3] For this reason, there are still significant issues of material fact as to the validity of the Agreement.

### 3. European Union

Although Worldwide Entertainment's argument does not speak to the European Union

---

[3] The Court recognizes that Worldwide Entertainment acknowledges this issue and cites the requirements of "well-known" marks in its Opposition to Adria Productions's Motion in *Limine* No. 3 to Preclude Evidence of Worldwide Fame or Notoriety of Worldwide Entertainment's Trademarks. However, because Worldwide Entertainment assumes that whether the marks are "well-known" is a secondary issue, Worldwide Entertainment fails to address the criteria with sufficient detail.

and its regulatory scheme for the protection of "well-known" trademarks, the Court will nonetheless address it given that the relevant Territory is not only Croatia, but the European Union as well. The European Union, to which Croatia has belonged since July 1, 2013, has a separate, but similar protection for "well-known" marks. Any legal person, including authorities established under public law, can register trademarks with the European Union Intellectual Property Office. *Id.* at § 54:5.Who may apply, § 54:2.Law and trademark office. While the European Union is not a member of the Paris Convention—although all of its member states are—there is still protection afforded to unregistered "well-known" marks.[4] *Id.* at § 54:3.Conventions, § 54:7.Not registrable; protection for well-known marks. That protection also seems to be somewhat liberal given that to overcome an objection to a trademark application, the onus is on the applicant to "provide evidence in support of acquired distinctiveness through use." *Id.* at § 54:7.

The protection for "well-known" marks in the European Union therefore seems to satisfy the definition of "use" protection set out in *Babbit*. As such, to the extent a party can demonstrate its standing to protect a trademark, it has the legal right to "use" protection of that trademark in the European Union. Here, like in Croatia, it seems likely that Worldwide Entertainment will be able to satisfy the requirements for protection of the Marks, but the record evidence is as of yet inconclusive on this issue.

For this reason, the Court finds that there are still significant issues of material fact as to the validity of the Agreement and summary judgment is **DENIED** as to Adria Productions's Count VIII for declaratory relief and Worldwide Entertainment's Counts I and II (breach of

---

[4] The Court performs the "well-known" marks analysis under the European Union's regulatory scheme for purposes of being thorough. The Court, however, recognizes that given that all member states of the European Union are signatories to the Paris Convention, to the extent that the Marks were used in any of the member states, the same analysis used above for Croatia would apply and "use" protection would exist for the Marks.

contract), and IV (unjust enrichment). Moreover, Adria Productions's alternative request for a declaration of facts finding that (1) Worldwide Entertainment had no rights to the purportedly licensed marks at any relevant time; and (2) nevertheless held itself out to be the owner of the purportedly licensed marks is likewise **DENIED**.

## IV.  **WORLDWIDE ENTERTAINMENT'S MOTION FOR SUMMARY JUDGMENT**

Given that Worldwide Entertainment seeks summary judgment on all of the counts in Adria Productions's Complaint[5] and all of the counts in its Counterclaim, each count is summarized and addressed below.

### A.  **Adria Productions's Counts I-X**

#### 1.  **Count I – Fraud in the Inducement; Count II – Fraudulent Misrepresentation; Count VI –Fraud**

Adria Productions alleges that Worldwide Entertainment fraudulently induced Adria Productions into entering the Promotional Agreement by fraudulently misrepresenting that it held trademark registrations in Croatia and Europe for the Marks. Worldwide Entertainment argues (1) that Adria Productions's fraud claims are not independent of the Agreement and are precluded by the Merger Clause, and (2) Adria Productions's fraud claims fail on the merits.

##### a.  **Fraud Claims are Independent and Precluded by the Merger Clause**

To Worldwide Entertainment's first point, Worldwide Entertainment states that "where alleged misrepresentations relate to matters already covered in a written contract, such representations are not actionable in fraud." *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017). Worldwide Entertainment contends that the alleged fraudulent statement—that

---

[5] With the exception of Adria Productions's Count VIII for Declaratory Relief, which was discussed above in Section III, and Count IX for Injunctive Relief, which, although not addressed in the parties' briefs, the Court surmises is moot given that Adria Productions was requesting an injunction to prevent Worldwide Entertainment from interfering with Adria Productions's production of the Festival in 2017.

Worldwide Entertainment owns trademark registrations in Croatia and the European Union—is directly addressed in the text of the Agreement because the Agreement does not represent that Worldwide Entertainment had registered the Marks. Moreover, the Agreement contains a merger provision, which states that the contract "sets forth the entire Agreement regarding the Event(s) and respecting the substance of this agreement and *supersedes all prior negotiations*, understanding, and agreements." (emphasis added). Under Florida law, "if a merger clause—or by extension, any part of a contract—addresses the nature of the oral misrepresentations, it prevents a plaintiff from bringing a claim grounded in those statements." *Freeman v. Sharpe Res. Corp.*, No. 6:12-cv-1548, 2013 WL 2151723, at *9 (M.D. Fla. May 16, 2013).

In response, Adria Productions argues that the "existence of a merger or integration clause, which purports to make oral arguments not incorporated into the written contract unenforceable, does not affect oral representations which are alleged to have fraudulently induced a person to enter into the agreement." *Mejia v. Jurich*, 781 So. 2d 1175, 1178 (Fla. 3d DCA 2001). And in cases involving fraudulent inducement, the Court applies a case-by-case analysis to agreements containing merger clauses. Here, Adria Productions disputes that the alleged misrepresentations are subsumed by the Agreement due to the Grant of Rights section[6] (and Adria Productions alleges that Worldwide Entertainment had no rights to the Marks) and because the Agreement showed the rights with a trademark registration symbol. On this point, the Court agrees with Adria Productions that its claims for fraudulent inducement and misrepresentation are *not* adequately addressed by the merger clause in the Agreement and thus turns to the merits of the claims themselves.

### b.     Merits of the Fraud Claims

---

[6] The Grant of Rights section grants Adria Productions the "non-exclusive and limited right" to use the Proprietary Marks during the term of the Agreement.

"Under Florida law, the essential elements of fraud include: (1) a false statement concerning a specific material fact; (2) a showing that the representor knew or should have known that the representation was false; (3) an intent that the representation induce another to act on it; and (4) consequent injury to the party acting in justifiable reliance on the representation." *Babbit*, 28 F.3d at 1176-77. Worldwide Entertainment argues that it did not represent to Adria Productions that it held registrations in Croatia and Europe for the Marks, but that even if it did, such a representation would not be "material." *See Obregon v. Windmills Capital, Inc.*, No. 13-cv-80699, 2015 WL 11348275 (S.D. Fla. Jan 22, 2015) (holding that a failure to establish that the defendant's false statement was material is fatal to a fraud claim). Worldwide Entertainment contends that (1) it was the owner of the Marks regardless of registration status; (2) there was a valid registration covering the marks "Ultra Music Festival" and "Ultra" at all times; and (3) Adria Productions received numerous benefits, not just the use of the Marks, under the Agreement; and (4) throughout the term of the Agreement, Worldwide Entertainment prevented any interference with use of the Marks in the territory. As such, any misrepresentation would have been immaterial to the benefits Adria Productions received under the Agreement. Lastly, Worldwide Entertainment argues that Adria Productions failed to use reasonable diligence in accessing public trademark databases or other public records to confirm the status of the Marks in the Territory. *See Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1320 (S.D. Fla. 2009), *aff'd*, 395 Fed. App'x 583 (11th Cir. 2010) ("[I]t is well agreed that where the means of knowledge are at hand and are equally available to both parties, and the subject matter is equally open to their inspection, if one of them does not avail himself of those means and opportunities, he will not be heard to say that he was deceived by the other's misrepresentations.") (internal citations and quotations omitted).

Adria Productions responds to Worldwide Entertainment's allegations, claiming that the testimony Worldwide Entertainment relies on to support its contention that it never made representations as to the registration of the Marks directly contradicts the testimony of Adria Productions's principal. Adria Productions's principal testified that one or more members of Worldwide Entertainment represented that it owned the rights to certain marks in Croatia and that Adria Productions relied on those representations when negotiating and ultimately executing the Agreement. Moreover, Adria Productions argues that with respect to its obligations to conduct due diligence, Florida law allows a recipient to "rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity obvious to him." *Gold v. Perry*, 456 So. 2d 1197, 1201 (Fla. 4th DCA 1984).

Because each party testified to the exact opposite of the other, the Court finds there are genuine issues of material fact with respect to whether Worldwide Entertainment represented that it owned the trademark registrations, whether those representations were material, and whether Adria Productions relied on them. Moreover, the Court notes that with respect to Adria Productions's due diligence, while it is true that the recipient of a fraudulent misrepresentation is justified in relying upon its truth even though the truth could have been easily ascertained, the Supreme Court of Florida has explained that "where one has an opportunity to make a cursory examination or investigation and does not do so, he cannot recover." *M/I Schottenstein Homes, Inc. v. Azam*, 813 So. 2d 91, 93 (Fla. 2002). For example, in *Babbit*, the court found that the plaintiff, a sophisticated company, made no "effort to determine whether [defendant] owned the licensed trademark registrations." 38 F.3d at 1177. Here, Adria Productions, also a sophisticated party, has not indicated that it attempted to do so.

For these reasons, genuine issues of material fact remain as to Adria Productions's fraud claims and therefore Worldwide Entertainment's motion for summary judgment as to Adria Productions's Counts I (fraud in the inducement), II (fraudulent misrepresentation), and VI (fraud) is **DENIED**.

### 2.    Count III – Breach of Contract

Adria Productions alleges that Worldwide Entertainment committed "numerous material breaches" of the Agreement, including "cutting off Adria Productions's access to social media channels used to promote the festival in 2017, disabling Adria Productions's email accounts used to promote the Festival in 2017, prohibiting Adria Productions from making any statements to fans or the media, and revoking Adria Productions's 'rights' to promote the Festival in 2017." Worldwide Entertainment argues that all of this alleged conduct occurred in direct response to Adria Productions's breaches and only after Adria Productions had defaulted on the Agreement, which permitted Worldwide Entertainment to terminate the contract and revoke Adria Productions's rights thereunder. Before the Court can assess the merits of the parties' arguments, it must determine whether the Agreement is void. For this reason, there remain genuine issues of material fact and Worldwide Entertainment's motion for summary judgment as to Adria Productions's Count III (breach of contract) is **DENIED**.

### 3.    Count IV – Breach of the Implied Covenant of Good Faith and Fair Dealing

Adria Productions claims that Worldwide Entertainment breached the implied covenant of good faith and fair dealing by consciously and deliberately frustrating the Agreement's purpose and disappointing Adria Productions's expectations by prohibiting it from promoting the 2017 Festival. Additionally, Adria Productions claims that Worldwide Entertainment forced Adria Productions to use Worldwide Entertainment's vendor contacts in an effort to receive

unjustified commissions and decrease Adria Productions's profits. Worldwide Entertainment argues that "the breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches instead to the performance of a specific contractual obligation." *Saxon Fin. Group, Inc. v. Rath*, No. 11-cv-80646, 2012 WL 3278662, at *7 (S.D. Fla. Aug. 9, 2012). Furthermore, "[a] breach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000). "[T]his rule comes into play when . . . one party has the power to make a discretionary decision without defined standards." *Saxon*, 2012 WL 3278662, at *7 (internal citations and quotations omitted). Here, Worldwide Entertainment alleges that Adria Productions's claim for breach of implied covenant fails because it is identical to its claim for breach of contract. Adria Productions argues, however, that Worldwide Entertainment abused its sole discretion under the Agreement to require that Adria Productions use highly priced preferred vendors with increasing yearly prices that ultimately prevented Adria Productions from generating a reasonable profit—an allegation different from that alleged in its claim for breach of contract. As stated above, before the Court can make a decision as to whether Worldwide Entertainment breached the implied covenant of good faith, it must determine whether the Agreement itself was valid or void. For this reason, Worldwide Entertainment's motion for summary judgment as to Adria Productions's Count IV (breach of the implied covenant of good faith and fair dealing) is **DENIED**.

### 4.  Count V – Promissory[7] Estoppel

To establish promissory estoppel liability, a claim must meet the following elements: "(1)

---

[7] The Court recognizes that Adria Productions mistakenly labeled this claim equitable estoppel and will thus refer to it as promissory estoppel.

a promise made by the promisor; (2) which the promisor should reasonably expect to induce action or forcearance on the part of the promise; (3) that in fact induced such action or forbearance; and that (4) injustice can be avoided only by enforcing the promise. Here, Adria Productions alleges that Worldwide Entertainment's representations that it owned trademark registrations for the Marks in Croatia and Europe induced Adria Productions to enter into the Agreement and spend millions of dollars in doing so. But Worldwide Entertainment contends that "[p]romissory estoppel is unavailable in cases where a written contract covers the subject matter in dispute between the parties." *Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC*, 9:16-cv-80076, 2017 WL 41197, at *9 (S.D. Fla. Jan. 31, 2017).

First, as with the other claims, the Court must determine whether the Agreement is valid or void in order to make a judgment as to Adria Productions's claim for promissory estoppel. Moreover, as with Adria Productions's claims for fraud, there remain genuine issues of material fact as to whether Worldwide Entertainment induced Adria Productions into entering the Agreement by making false representations about the Marks. For these reasons, Worldwide Entertainment's motion for summary judgment as to Adria Productions's Count V (promissory estoppel) is **DENIED**.

### 5. Count VII – Unjust Enrichment

Adria Productions alleges that it is entitled to unjust enrichment because it paid substantial fees, commissions, expenses, and other amounts to promote the "Ultra" brand in Europe, but received no corresponding benefit because Worldwide Entertainment could not legally license the rights to the Marks in Croatia and Europe. Under Florida law, "upon a showing that an express contract exists between the parties . . . [an] unjust enrichment . . . count fails." *Leader Global Solutions, LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 155 F. Supp. 3d

1310, 1319 (S.D. Fla. 2016). As Adria Productions states in its opposition to Worldwide Entertainment's motion for summary judgment, questions of material fact remain as to whether or not the agreement is valid and enforceable and, if not, whether any benefits received by Worldwide Entertainment were unjustly retained. For this reason, Worldwide Entertainment's motion for summary judgment as to Adria Productions's Count VII (unjust enrichment) is **DENIED**.

### 6. Count X – Tortious Interference with Business Relationships

To state a claim for tortious interference, "a plaintiff must show: (1) the existence of a business relationship; (2) that defendant had knowledge of the relationship; (3) the defendant intentionally and unjustifiably interfered with the relationship; and (4) the plaintiff suffered damage as a result." *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1238 (S.D. Fla. 2015) (internal citations omitted). Adria Productions alleges that it has numerous business relationships relating to the Festival with vendors, transportation companies, hotels, restaurants, ticketing companies, ticket holders, and industry people, which Worldwide Entertainment has knowledge of due to its involvement in the Festival since 2013. Adria Productions accuses Worldwide Entertainment of "intentionally and unjustifiably" interfering with these relationships by preventing Adria Productions from promoting and producing (e.g., cutting off Adria Productions's access to social media channels, disabling Adria Productions's email accounts, and prohibiting Adria Productions from making any statements to fans/media) the Festival in 2017 such that its business relationships have been irreparably damaged. In response, Worldwide Entertainment maintains that it was within its rights to revoke Adria Productions's rights under the Promotional Agreement due to Adria Productions's breaches, and that such conduct cannot give rise to a tortious interference claim.

"To be liable for tortious interference a defendant must have both the intent to damage

the business relationship and a lack of justification for doing so." *See Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (internal citations and quotations omitted). Under the Promotional Agreement, Adria Productions automatically assigns all of its rights, title and interest thereunder and under any other agreements, contracts, or arrangements respecting the events to Worldwide Entertainment. Therefore, Worldwide Entertainment argues, the plain terms of the Agreement allow Worldwide Entertainment to assume Adria Productions's business relationships with its vendors. Moreover, to the extent that Adria Productions is claiming interference with any contractual relationship it had with any third party relating to any event produced under the Agreement, Worldwide Entertainment states that this claim fails because Worldwide Entertainment is not a "stranger" to Adria Productions's business relationships. "[A] claim for tortious interference cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party. In other words, the interfering defendant must be a third party, a stranger to the business relationship." *Romika-USA*, 514 F. Supp. 2d at 1338 (internal quotations omitted). Because the Agreement provides that Worldwide Entertainment is a third party beneficiary of all agreements entered into by Adria Productions related to the events produced by Adria Productions, Worldwide Entertainment contends that it was not a stranger and thus Adria Productions's claim fails. Adria Productions refutes the claim that Worldwide Entertainment was a party to any of its business relationships prior to its revocation of the Agreement.

The Court agrees with Adria Productions that genuine issues of material fact remain as to whether Worldwide Entertainment was justified in interfering with Adria Productions's business relationships. For this reason, Worldwide Entertainment's motion for summary judgment as to Adria Productions's claim for tortious interference (Count X) is **DENIED**.

**B.    Worldwide Entertainment's Counterclaim Counts I-IX**

**1.    Counts I & II – Breach of Contract**

Worldwide Entertainment alleges that Adria Productions breached the promotional agreement by (1) failing to pay $366,211 in fees due in connection with the 2017 Festival, and (2) failing to remit to Worldwide Entertainment approximately € 1.4 million in pre-sold ticket monies advanced to Adria Productions for the 2017 Festival, and seeks damages in those sums. In addition, Worldwide Entertainment alleges that Adria Productions breached by (1) failing to assign or relinquish all "Ultra" related intellectual property rights, and (2) hosting an unauthorized press conference during which Adria Productions used Worldwide Entertainment's proprietary marks without Worldwide Entertainment's authorization to promote a different music event that Adria Productions attempted to produce. Worldwide Entertainment also claims that Adria Productions breached and/or is intending to breach the non-competition provision of the Promotional Agreement by either producing and/or planning a festival or event that will compete with Worldwide Entertainment's festivals. Adria Productions disputes the validity of the Promotional Agreement, such that a determination of whether Adria Productions breached is not ripe for decision at this time. For this reason, Worldwide Entertainment's motion for summary judgment as to its breach of contract claims (Counts I & II) is **DENIED**.

**2.    Count III – Misappropriation of Trade Secrets**

Worldwide Entertainment claims that Adria Productions misappropriated trade secrets in violation of Florida's Uniform Trade Secret Act, Fla. Stat. § 688.001 *et seq.*, by knowingly and purposefully disclosing Worldwide Entertainment's valuable trade secrets in discussions, negotiations, and/or business relationships with a known competition of Worldwide Entertainment. Worldwide Entertainment seeks summary judgment on its claim, requesting that the Court enjoin during the pendency of this action, and permanently thereafter, Adria

Productions, its principals, officers, agents, employees, shareholders and directors, from disclosing any of Worldwide Entertainment's confidential and proprietary business information to any third parties, and continuing to use any of Worldwide Entertainment's confidential and proprietary business information, and awarding Worldwide Entertainment damages, exemplary damages, punitive damages, and attorneys' fees and costs.

To prevail on a claim for misappropriation under Florida's Uniform Trade Secrets Act, a plaintiff must prove that (1) it possessed secret information and took reasonable steps to protect its secrecy; and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained by one who used improper means to obtain it. *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001). A trade secret is information that (1) derives actual or potential independent economic value from not being generally known to, and not being readily ascertainably by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *Id.* If, however, "the information in question is generally known or readily accessible to third parties, it cannot qualify for trade secret protection." *Id.* (citing *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998)).

### a.    (1) Possession of Trade Secrets

Worldwide Entertainment proffers that Adria Productions was privy to non-public confidential business information belonging to Worldwide Entertainment that Worldwide Entertainment used to plan, promote and orchestrate successful electronic music festivals. More specifically, that Adria Productions had knowledge of Worldwide Entertainment's business methodology for designing and constructing stage and site layouts, which Worldwide Entertainment argues are critical to the success of its electronic music festivals and differentiate

Worldwide Entertainment from its competitors. Worldwide Entertainment also states that Adria Productions was privy to plans for future expansion, as well as various equipment lists and contact lists with artists, vendors, sponsors, and other industry insiders, which Worldwide Entertainment claims has taken over twenty (20) years to cultivate.

Adria Productions contends that this information does not qualify as trade secrets. As to stage layout and design, Adria Productions argues that once the stage is unveiled at a festival in front of over one hundred thousand people, it is no longer a secret such that Worldwide Entertainment could claim protection under Florida's Uniform Trade Secret Act. Moreover, Adria Productions argues that Worldwide Entertainment employs the same production crew as its competitor and that the crew is already privy to these secrets.[8]

### b.    (2) Protection of Trade Secrets

Worldwide Entertainment contends that it protects its purported trade secrets from disclosure by requiring its licensees and parties with whom it does business to sign confidentiality and non-disclosure agreements. *See generally Medi-Weightloss Franchising USA, LLC v. Sadek*, No. 09-cv-2421, 2010 WL 1837767 (M.D. Fla. Mar. 11, 2010) (execution of a non-disclosure agreement constitutes a reasonable step to protect trade secrets and business information from improper use/disclosure). In fact, the Promotional Agreement included a confidentiality/non-disclosure provision, which bound Adria Productions to maintain the secrecy of Worldwide Entertainment's "strategies, promotional techniques, Artist, vendor or sponsor contact information, terms of agreements with Artists, vendors or sponsors, passwords and future plans."

---

[8] It is unclear whether Adria Productions is suggesting that the production crew informed/could inform Worldwide Entertainment's competitor about the information Adria Productions is denying they disclosed *or* if Adria Productions is suggesting that because the production crew is made aware of the stage and site layouts that they are not "trade secrets."

Adria Productions argues that Worldwide Entertainment's reliance on the confidentiality/non-disclosure provision in the Agreement is not enough to satisfy this prong. Adria Productions criticizes Worldwide Entertainment's failure to mention other parties with whom it entered into non-disclosure agreements and/or other steps that it took to protect the secrecy of its alleged trade secrets besides this provision in the Agreement.

### c.    (3) Misappropriation of Trade Secrets

According to a sworn declaration submitted by Worldwide Entertainment, there is a purported email exchange between Adria Productions and a known Worldwide Entertainment competitor, wherein Adria Productions provided the competitor with stage schematics, technical information about the production elements of an "Ultra" branded festival, and other non-public information.[9] Adria Productions does not deny the existence of the emails, but explains that the alleged competitor is asking for "past" Ultra Europe designs and a gear list related to production that Adria Productions alleges is known by the competitor's own agents/contractors. Furthermore, Adria Productions goes on to say that Worldwide Entertainment fails to present evidence that any of this information was actually disclosed. Relying on Worldwide Entertainment's sworn statement—because Worldwide Entertainment has not submitted the actual emails for the Court's review—it would appear that because the competitor's email thanks Adria Productions for "sending all of the information" that Adria Productions in fact did disclose information.

The Court agrees with Adria Productions that there is a genuine issue of material fact as to whether Worldwide Entertainment's alleged trade secrets were, in fact, secrets and whether

---

[9] Worldwide Entertainment alleges that on February 26, 2017, a Worldwide Entertainment competitor sent an email to Adria Productions stating: "Could you please send us past Ultra Europe stage designs, layouts, and any other information that might be useful to us. . ." And that on March 4, 2017, Worldwide Entertainment's competitor confirmed receipt of the information, responding: "Thank you for sending all of the information to us. Would you happen to have a gear list for lighting, video, audio, and sfx that are available."

Worldwide Entertainment's competitor knew or had access to the allegedly secret information. For this reason, Worldwide Entertainment's motion for summary judgment as to its Count III (misappropriate of trade secrets) is **DENIED**.

### 3. Count IV – Unjust Enrichment

Worldwide Entertainment alleges that Adria Productions was unjustly enriched because Worldwide Entertainment conferred benefits, including the support and know-how in the planning and execution of numerous events, use of the "Ultra" domain names, Twitter handles, Instagram pages, Facebook pages, international marketing of the events, as well as access to talent and talent booking, which Adria Productions accepted and retained (which Worldwide Entertainment values at $366,211). Worldwide Entertainment further alleges that Adria Productions wrongfully retained € 1.4 million in ticket sales for the 2017 event. Worldwide Entertainment argues that it would be inequitable for Adria Productions to retain these benefits without paying the value thereof of to Worldwide Entertainment.

Worldwide Entertainment argues unjust enrichment as an alternative to its breach of contract claim. Because the Court must first determine the validity of the Promotional Agreement, Worldwide Entertainment's motion for summary judgment as to its Count IV (unjust enrichment) is **DENIED**.

### 4. Count V – Violation of Florida's Computer Abuse and Data Recovery Act

Worldwide Entertainment accuses Adria Productions of accessing Worldwide Entertainment's computer system without authorization and in violation of Florida's Computer Abuse and Data Recovery Act, Fla. Stat. § 668.801, *et seq.* Under the Act, it is a violation for a person, who knowingly and with intent to cause harm or loss, to obtain information from a protected computer without authorization and, as a result, causes harm or loss. Fla. Stat. §

668.803(1). Here, Worldwide Entertainment alleges that during the term of the Agreement, Adria Productions was provided access to Worldwide Entertainment's email servers, which were specifically designed to host all of Adria Productions's email traffic regarding the Ultra Europe festival and related events. Further, the Agreement granted Worldwide Entertainment the right to restrict, suspend, or discontinue Adria Productions's access to the servers upon a breach of the contract.[10]

Following Adria Productions's failure to cure, Worldwide Entertainment rescinded the Promotional Agreement, as well as Adria Productions's access to the email accounts. Despite Worldwide Entertainment's suspension of Adria Productions's access, Worldwide Entertainment alleges that Adria Productions continued to access the accounts by circumventing password protections, allowing Adria Productions to misappropriate emails and costing Worldwide Entertainment money in investigation, assessment and restoration of the domain. Adria Productions disputes the allegations, claiming that there is no evidence to support Worldwide Entertainment's claim that Adria Productions *knowingly* accessed the suspended email accounts and that, even if they did, there is no evidence that there was an intention to cause harm or that Worldwide Entertainment suffered any loss. With respect to the first prong, Adria Productions's circumvention of Worldwide Entertainment's password protections suggests that Adria Productions *knowingly* accessed the suspended email accounts, but there remains a genuine issue of material fact as to whether Adria Productions actually knew. With respect to the second

---

[10] Upon review of the Agreement, there does not seem to be a provision that speaks to email access or use of servers. Unless, however, the section to which Worldwide Entertainment refers is Section 15. Web Properties; Domain Names, which tasks Adria Productions with maintaining the event website, and gives Worldwide Entertainment the right to "restrict, suspend or discontinue" Adria Productions's access to the website(s). Under that section, the Agreement states that Worldwide Entertainment shall provide Adria Productions with "the information reasonably necessary for Adria Productions to perform its website maintenance duties." *Id.* The Court will assume, for purposes of this analysis, that granting Adria Productions a right to use Worldwide Entertainment's email servers was necessary for Adria Productions to perform its website maintenance duties.

prong, however, Worldwide Entertainment fails to present sufficient evidence to support that it suffered any harm or loss apart from stating that it "incurred costs and damages, including the costs of investigating Adria Productions's actions, assessing the damage to Worldwide Entertainment's systems and restoring the domain." Worldwide Entertainment alleges that it "lost data" and that Adria Productions "misappropriated emails," but Worldwide Entertainment does not provide any further evidence thereof.

For these reasons, Worldwide Entertainment's motion for summary judgment as to Count V (violation of Florida's Computer Abuse and Data Recovery Act) is **DENIED**. Although Adria Productions did not move for summary judgment on this claim and it will accordingly proceed to trial, the Court finds it unlikely that it will survive and will revisit it on motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 after all evidence has been presented.

### 5. Count VI – Violation of Stored Wire and Electronic Communications and Transactional Records Access

Worldwide Entertainment alleges that Adria Productions's alleged unauthorized access of its suspended email accounts also violated 18 U.S.C. § 2701 of the Stored Communications Act. To state a claim under the Stored Communications Act, a plaintiff must establish two elements: "(1) the defendant intentionally accessed without authorization a facility through which an electronic communication service is provided or intentionally exceeded an authorization to access that facility and (2) the defendant obtained, altered, or prevented authorized access to a wire or electronic communication while it is in electronic storage in such system." *Stirling Int'l Realty, Inc. v. Soderstrom*, 6:14-cv-1109-Orl-40TBS, 2015 WL 2354803, at *4 (M.D. Fla. May 15, 2015) (citing *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1321 (11th Cir. 2006) (internal quotations omitted). For the same reasons Worldwide Entertainment alleged Adria Productions

violated the Florida Computer Abuse and Data Recovery Act, Worldwide Entertainment alleges that Adria Productions violated Stored Communications Act. In summary, Worldwide Entertainment claims that Adria Productions gained access to the suspended email accounts by resetting the passwords thereby making the accounts unavailable to Worldwide Entertainment and violating the Stored Communications Act. Adria Productions maintains that it was unaware that its access to the accounts had been rescinded.

The Court finds that there is a genuine issue of material fact as to whether Adria Productions *knowingly* accessed the email accounts in violation of the Stored Communications Act. For this reason, Worldwide Entertainment's motion for summary judgment as to Count VI (violation of Stored Communications Act) is **DENIED**.

### 6. Counts VII, VIII & IX –Trademark Infringement & Unfair Competition

To establish trademark infringement and unfair competition under both the Lanham Act and Florida common law, Worldwide Entertainment must demonstrate that (1) Worldwide Entertainment's marks have priority; (2) Adria Productions used Worldwide Entertainment's marks in commerce; and (3) Adria Productions's use of Worldwide Entertainment's marks is likely to cause consumer confusion. *Pepsico, Inc. v. Distribuidora La Matalgapa, Inc.*, 510 F. Supp. 2d 1110, 1114 (S.D. Fla. 2007); 15 U.S.C. § § 1114, 1125(a).

#### a. Ownership of the marks

An incontestable United States trademark registration conclusively establishes ownership of exclusive rights in that trademark. *Pepsico*, 510 F. Supp. 2d at 1115. A trademark is incontestable if it has been registered with the United States Patent & Trademark Office ("USPTO") for five years and the USPTO has declared it incontestable. *See Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1336 (11th Cir. 1999). Worldwide

Entertainment holds rights to various trademarks in the United States, including "Ultra Music Festival" and the stylized "U"—both of which were registered in 2004. In the European Union, Worldwide Entertainment has rights to "UMF", "UMF Poland", the stylized "U"—all of which were registered in 2012—and "Ultra Music Festival"—registered in 2015. According to Worldwide Entertainment, at issue here are the marks "Ultra Europe" and the stylized "U".

### b.    Use in commerce

Under the Lanham Act, "use in commerce" "denotes Congress's authority under the Commerce Clause rather than an intent to limit the Lanham Act's application to profit making activity." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194 (11th Cir. 2001). "Because Congress's authority under the Commerce Clause extends to activity that 'substantially affects' interstate commerce, *United States v. Lopez*, 514 U.S. 549, 559 (1995), the Lanham Act's definition of 'commerce' is concomitantly broad in scope: 'all commerce which may lawfully be regulated by Congress.'" *Id.* (citing 15 U.S.C. § 1127). Here, Worldwide Entertainment alleges that Adria Productions used the Marks (although Worldwide Entertainment does not specify which mark(s)) in commerce on September 7, 2016, by hosting a press conference in Croatia during which Adria Productions displayed the Marks without Worldwide Entertainment's authorization and in violation of the Promotional Agreement. Adria Productions admits using a proprietary mark (again, Adria Productions does not clarify which mark) during a press conference, but denies that it did so without authorization. The issue of authorization seems to create a genuine issue of material fact. But that issue of fact notwithstanding, Worldwide Entertainment seems to have failed to meet its burden in proving that the mark was used "in commerce" at the press conference. While the "use in commerce" provision is broad, courts will not extend the Act extraterritorially where there is no evidence to support that use of marks abroad affected United States' commerce. Worldwide Entertainment

has failed to demonstrate how Adria Productions's press conference affected and/or had the potential to affect commerce in the United States. Worldwide Entertainment has not alleged whether the press conference was broadcast to American audiences or whether it targeted American consumers. The Court cannot assume what it does not know. Instead, Worldwide Entertainment suggests that "use at a press conference is obviously a use in commerce." The Court disagrees that this so *obvious*. Accordingly, Worldwide Entertainment has failed to meet its burden of demonstrating that the mark(s) was used "in commerce" during the press conference.

Moreover, Worldwide Entertainment also alleges that Adria Productions intends to use the Marks to produce a competing festival in violation of the Promotional Agreement and of Worldwide Entertainment's trademark rights. But as mentioned above, Worldwide Entertainment has failed to demonstrate how Adria Productions's use of the Marks affect/will affect commerce in the United States such that a claim under the Lanham Act is appropriate.

### c.  Likelihood of confusion

There are seven factors considered "in assessing whether a likelihood of consumer confusion exists: (1) type of mark; (2) similarity of mark; (3) similarity of the goods the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion." *Frehling*, 192 F.3d at 1335. The type of mark and evidence of actual confusion are the most important. *Id.* At this time, however, the Court does not find it necessary to analyze this prong of the test given that Worldwide Entertainment has failed to meet its burden regarding "use in commerce."

For the foregoing reasons, Worldwide Entertainment's motion for summary judgment as to Counts VII (common law trademark infringement), VIII (unfair competition), & IX (federal trademark infringement) is **DENIED**.

## III. CONCLUSION

For the foregoing reasons, Adria Productions's Motion for Partial Summary Judgment and Worldwide Entertainment's Motion for Summary Judgment are **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this _6th_ of September 2018.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record