UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 17-21603-CIV-MORENO

ADRIA MM PRODUCTIONS, LTD.,

        Plaintiff,

vs.

WORLDWIDE ENTERTAINMENT GROUP, INC.,

        Defendant.

_____/

## ORDER DENYING WORLDWIDE ENTERTAINMENT GROUP, INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

### I. BACKGROUND

Plaintiff/Counter-Defendant Adria MM Productions, Ltd., a Croatian company, and Defendant/Counter-Plaintiff Worldwide Entertainment Group, Inc., a Miami-based company, entered into a five-year Promotional Agreement for the production of "Ultra Europe" musical festivals in Croatia. Pursuant to the Agreement, Worldwide Entertainment granted Adria Productions the right to use certain "Ultra" trademarks in Croatia and Europe to promote the events, in exchange for licensing and promotional fees. After Worldwide Entertainment revoked the Agreement for alleged material breaches, Adria Productions filed suit, claiming that the Agreement was void for fraud or, in the alternative, had been breached. Specifically, Adria Productions alleged ten counts: I-Fraud in the inducement; II-Fraudulent misrepresentation; III-Breach of contract; IV-Breach of the implied covenant of good faith and fair dealing; V-Equitable (promissory) estoppel; VI-Rescission (fraud); VII-Unjust enrichment; VIII-Declaratory relief; IX-Injunctive relief; and X-Tortious interference with business relationships.

In response, Worldwide Entertainment countersued claiming that, among other things, Adria Productions breached the contract entitling Worldwide Entertainment to damages. More specifically, Worldwide Entertainment alleged nine counts in its Counterclaim: I-Breach of contract (damages); II-Breach of contract (injunction); III-Misappropriation of trade secrets; IV-Unjust enrichment; V-Violation of Florida's Computer Abuse and Data Recovery Act; VI-Violation of the Stored Wire and Electronic Communication and Transactional Records Access; VII-Common law trademark infringement; VIII-Unfair competition; and IX-Federal trademark infringement.

The Court held a four-day jury trial on the parties' legal claims. After the close of evidence, the parties argued Federal Rule of Civil Procedure 50(a) motions for judgment as a matter of law. After granting Worldwide Entertainment's motion as to Adria Productions's Count IV, the Court allowed Adria Productions's breach of contract, fraudulent inducement, fraudulent misrepresentation, and tortious interference with business relationships claims to be submitted to the jury. Likewise, after granting Adria Productions's Rule 50(a) motion as to Worldwide Entertainment's Counts III, V, VI, VII, VIII, and IX, Worldwide Entertainment submitted only its breach of contract claim to the jury.

The jury rendered its verdict, finding that both parties had breached the contract and that Worldwide Entertainment had tortiously interfered with Adria Productions's business relationships. The jury awarded Adria Productions $0 for its breach of contract claim and $866,000 for its tortious interference with business relationships claim. Worldwide Entertainment was awarded $366,211 for its breach of contract claim. The Court then heard argument on the parties' remaining equitable claims, all of which were denied.

Following the entry of judgment, Worldwide Entertainment filed a joint Rule 50(b)

motion for judgment as a matter of law and Rule 59 motion for new trial (D.E. 203). The Court has reviewed the motion, the response, the reply, the relevant portions of the record, and is otherwise fully advised in the premises. For the reasons stated below, Worldwide Entertainment's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial is DENIED.

## II. LEGAL STANDARD

### A. Rule 50(b) Renewed Motion for Judgment as a Matter of Law

Worldwide Entertainment's renewed motion for judgment as a matter of law is governed by Federal Rule of Civil Procedure 50(b). Rule 50(b) allows a party whose motion for judgment as a matter of law pursuant to Rule 50(a) was denied at trial, to renew the motion before the Court after judgment has been entered, along with an alternative or joint request for a new trial under Rule 59. *See* Fed. R. Civ. P. 50(b). Rule 50(a) "is the mechanism for defendants to challenge the sufficiency of a plaintiff's evidence at and after the close of the evidence." *Peer v. Lewis*, No. 06-60146-CIV-EGT, 2008 WL 2047978, at *3 (S.D. Fla. May 13, 2008). "[A]ny renewal of a motion for judgment as a matter of law under Rule 50(b) must be based on the same grounds as the original request for judgment as a matter of law prior to the case being submitted to the jury." *Id.* (citing *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2006)) (internal citations and quotations omitted). Renewed motions for judgment as a matter of law pursuant to Rule 50(b) are reviewed under the exact same standard as Rule 50(a). *Id.* Under this standard, "[a] district court should grant judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 432 F. Supp. 2d 1319, 1332 (S.D. Fla. 2006) (citing *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272,

1279 (11th Cir. 2005)). On the other hand, "the Court should deny the motion if the plaintiff presents enough evidence to create a substantial conflict in the evidence on an essential element of the plaintiff's case." *Id.* (internal quotations omitted).

The court must uphold the jury's verdict "unless there is no legal basis upon which the jury could have found for the plaintiff." *Peer*, 2008 WL 2047978, at *3 (quoting *Telecom Techn. Servs., Inc. v. Rolm Co.*, 388 F. 3d 820, 830 (11th Cir. 2004)) (internal quotations omitted); *see also Delpit v. Nocuba Shipping Co.*, 302 F.2d 835, 838 (5th Cir. 1962) (explaining that the court may not "second-guess jurors or substitute [its] judgment for theirs"). The court may not engage in "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts"—those are the functions of the jury. *Alphamed*, 432 F. Supp. 2d at 1332 (citing *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000)). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* "If there are conflicting inferences that can be drawn from [the] evidence, it is not the court's role to pick the better one. Instead, all reasonable inferences from the evidence must be drawn in [the non-movant's] favor." *Peer*, 2008 WL 2047978, at *4 (citing *Jackson v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276, 1281 (11th Cir. 2005)).

Likewise, even if the Court disagrees with the jury's assessment of damages, it has "no general authority to reduce the amount of a jury's verdict." *Marlite, Inc. v. Eckenrod*, No. 09-22607-CIV-EGT, 2011 WL 39130, at *3 (S.D. Fla. Jan. 5, 2011) (citing *Kennon v. Gilmer*, 131 U.S. 22, 29 (1889)). "The Seventh Amendment prohibits re-examination of a jury's determination of the facts, which includes its assessment of the extent of the [party's] injuries." *Id.* (citations omitted). To allow such re-examination "would deprive the parties of their Seventh

Amendment right to a jury trial." *Id.* (citing *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 (11th Cir. 1999)).

That said, "[w]hile the court must afford due deference to the jury's findings, it is axiomatic that such findings are not automatically insulated from review by virtue of the jury's careful and conscientious deliberation. *Peer*, 2008 WL 2047978, at *4 (citing *Johnson v. Clark*, 484 F. Supp. 2d 1242, 1245-46 (M.D. Fla. 2007)). Rule 50 allows the trial court to remove issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result." *Id.* The jury's verdict "is not entitled to the benefit of unreasonable inferences, or those at war with the undisputed facts." *Alphamed*, 432 F. Supp. 2d at 1333 (internal quotations and citations omitted).

### B. Rule 59 Motion for New Trial

"If alternative motions for judgment as a matter of law and for new trial are presented, the Court should rule on the motion for judgment, and whatever his or her ruling thereon he or she should also rule on the motion for a new trial, indicating the grounds of his or her decision." *Id.* (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 253 (1940)) (internal quotations omitted). Under Federal Rule of Civil Procedure 59(a), "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . ." *See* Fed. R. Civ. P. 59. "Resolution of a motion for new trial is committed to the discretion of the trial court." *Peer*, 2008 WL 2047978 at *17 (citing *Montgomery v. Noga*, 168 F.3d 1282, 1296 (11th Cir. 1999)). When deciding whether to grant a motion for new trial, "the judge must determine if in his opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be

5

substantial evidence which would prevent the direction of a verdict." *Id.* (quoting *Insurance Co. of N. America v. Valente*, 933 F.2d 921, 922-23 (11th Cir. 1991)) (internal quotations omitted). "The judge must protect against manifest injustice in the jury's verdict, but it is not his role to assess credibility where conflicting testimony has been presented during the trial. Instead, the judge must defer to the jury on the weight to be given to each witness's testimony." *Id.* (internal citations and quotations omitted). Although there is not an exhaustive list of reasons, a new trial may be granted based on the fact that "the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Alphamed*, 432 F. Supp. 2d at 1334 (quoting *Montgomery Ward*, 311 U.S. at 251)).

### III. ANALYSIS

#### A. Worldwide Entertainment's Rule 50(b) Renewed Motion for Judgment as a Matter of Law

Worldwide Entertainment argues that its Rule 50(b) motion should be granted because (1) Adria Productions failed to prove the damages element on its claim for tortious interference; (2) Adria Productions's damages, if any, must be reduced pursuant to the limitation on liability provision under the Promotional Agreement; and (3) Adria Productions also failed to prove the damages element on its breach of contract claim given that the jury returned a $0 verdict.

#### (1) Claim for Tortious Interference with Business Relationships

To state a claim for tortious interference, Adria Productions was required to prove: "(1) the existence of a business relationship; (2) the defendant had knowledge of the relationship; (3) the defendant intentionally and unjustifiably interfered with the relationship; and (4) the plaintiff suffered damage as a result." *Alphamed*, 432 F. Supp. 2d at 1352 (citations omitted). At trial, the

jury found for Adria Productions on its claim for tortious interference with business relationships and awarded $866,000 in damages. Worldwide Entertainment now argues that Adria Productions failed to prove damages and that, as a result, its claim fails as a matter of law. *See Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1355-56 (S.D. Fla. 1999) ("an integral element of a claim of tortious interference with a business relationship requires proof of damage to the plaintiff as a result of the breach of the relationship. Proof of nominal damages will not suffice") (quoting *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994)) (internal quotations omitted).

Specifically, Worldwide Entertainment argues that Adria Productions failed to provide any evidence (testimonial or documentary) that would support damages for tortious interference. Although Worldwide Entertainment argues that Adria Productions gave conflicting arguments as to the amount and origin of damages for the tortious interference claim during its legal argument on its Rule 50(a) motion, at closing arguments Adria ultimately submitted to the jury that damages were the amount of ticket sales Adria Productions should have received from Fan, Inc., their contracted ticketing agency, but for Worldwide's interference. To that point, Worldwide contends that Adria Productions's sole witness, Mr. Busljeta, testified[1] to the contrary, that in fact Adria did receive those funds, citing the following testimony:

> Q. Going back to the money from the tickets that were sold in 2017, you said you got some of the money?
>
> A. Yeah. We start selling the tickets for 2017 edition somewhere in October and then we collect up to I think February or March, something around – I'm not sure – 2 million Euros from the sales, or 1.4, 1.6, something like that.
>
> Q. Does Adria MM still possess that 1.6 to 2 million Euros, I think you said?

---

[1] Adria Productions objects to the use of excerpts from the rough transcripts of testimony taken during the jury trial. The objection is noted and overruled.

7

> A. No. As always, when we start with sales – and we always start somewhere in October or November of the year which is before the year of the festival. So we – with that money we always paid what we owed for before and for following year. So we – when we start with sales in October 2016, with the money we paid all of the costs related to 2016 festival and some of the costs for 2017 festival, and salaries for employees, social networks, pushups and everything.

*See* Testimony of Nikola Busljeta at 64:7-23. Worldwide argues that Mr. Busljeta's testimony demonstrates that Adria Productions not only received the ticketing funds, but that they used them and that, as a result, the ticket funds cannot be the basis for Adria's damages. But Worldwide's reading of the testimony is incomplete and inconsistent with the rest of Mr. Busjleta's testimony. In Worldwide's excerpt, Mr. Busljeta testified only that Adria Productions received *some* of the money from the tickets that were sold, not all of the money, which is consistent with Mr. Busjleta's earlier testimony wherein he stated the following:

> Q. Okay. Were you expecting to receive the revenue from the tickets that were sold by the companies that you had contracts with?
>
> A. Of course.
>
> Q. And did you receive the revenue for the tickets that you sold?
>
> A. Some of the revenue, yes; some of the revenue, no.
>
> Q. Why did you not receive some of the revenue?
>
> A. Because Worldwide Entertainment Group sent letter to our partners, ticket shop providers, saying that we are not anymore their partners and that we are not allowed to organize the festival, and that they are the one who will collect the money, even though we had all the contracts – Adria MM had all the contracts with these companies – with those companies.

*See* Sept. 17, 2018 Testimony of Nikola Busljeta at 57:19-58:7. Shortly thereafter, Mr. Busljeta testified further:

8

> Q. And what did Fan, Inc. do or not do after they received this letter?
>
> A. They didn't send money from sales to us and they – actually I think they stopped with selling and they were calling us, what is going on.

See Sept. 17, 2018 Testimony of Nikola Busljeta at 60:9-13. And on cross-examination, Mr. Busljeta stated:

> Q. Respectfully, sir, that was not my question. My question was: Was the failure to pay the $366,211 a violation of the agreement or not?
>
> A. But how can we pay if they deduct us with the money from the ticket sales? There is no money from – there is no ticket sales. They say it to our ticket sale partners, you cannot give Adria MM money. So from where we can pay?
>
> Q. The agreement doesn't say you only have to pay the license fee if there are ticket sales to cover it, does it?
>
> A. We paid from the funds of our other companies also, yes. But you need to understand, we were in debt like over few million Euros. So we count on ticket sales money.

See Sept. 18, 2018 Testimony of Nikola Busljeta at 37:4-15. Read together, Mr. Busljeta's testimony suggests, and the jury certainly could have inferred, that although Adria Productions received a certain amount of revenue from ticket sales, Worldwide Entertainment's default letter interfered with them having received the remainder and ultimately with being able to pay additional outstanding debts thereby supporting an award of damages.

Moreover, and notwithstanding the above, Worldwide argues that Adria Productions was not entitled to the ticketing revenue because it was required to sequester the funds pursuant to ¶ 11(j) of the Promotional Agreement.[2] However, evidence was presented to the jury

---

[2] **j. No Advancement of Ticket Sale Revenue; Sequestration.**

9

demonstrating that (1) the sequestration provision could have been interpreted differently by the parties and (2) industry standard called for use of the ticketing funds to pay vendors for the event, meaning that compliance with the clause rendered performance under the agreement impossible.

As to the first possible reason for the verdict, Adria Productions argued that the provision only required Adria to sequester the funds in the first year of the contract, not in subsequent years, including 2017, the year at issue. And, as the Court noted upon Worldwide Entertainment's objection for mischaracterization of the contract language, the jurors were entitled to read the contract and interpret the language for themselves. *See* Sept. 18, 2018 Testimony of Russell Faibisch at 171:2-11. Based on the verdict, it seems that the jurors not only did so, but did so in favor of Adria. As to the second, Mr. Busljeta testified the following on cross-examination:

> Q. Okay. So isn't it true then that the $366,211 payment was not conditioned on payment from ticket sales?

---

AMM shall not, during Year 1, be permitted to accept – whether directly or indirectly, in full or in part – any advanced ticket sale revenue without the express approval of Ultra, which may be withheld, delayed or conditioned. During subsequent years, and provided that AMM is not in default of this or any other agreement with Ultra, or its subsidiaries or affiliates, AMM shall have the right to seek advancement of ticket sale revenue subject to Ultra's approval. If Ultra approves either the full or partial release or advancement of ticket sale revenue hereunder, such advanced ticket sale revenue shall, at all times, either be (i) set aside and maintained However, evidence was presented to the jury demonstrating that (1) the sequestration provision could have been interpreted differently by the parties and (2) the parties' course of conduct throughout the years waived and/or excused the sequestration requirement. As to the first possibility, Adria Productions argued that the provision only required that in a separate ban , escrow or trust account for the sole benefit of ticket holders and Ultra (as solely determined in advanced by Ultra), or (ii) AMM shall procure and maintain Event cancelation Insurance, which shall name Ultra or its designee as an additional insured. AMM also acknowledges and agrees that any monies collected by AMM relative to the Event, but not remitted to Ultra hereunder, shall, at all relevant rimes, be deemed funds held in trust for the sole benefit of Ultra and such funds shall be deemed fully earned by Ultra without right of offset by AMM.

> A. From the first year. And if you are in promotor life, you understand that you need to use ticket sales money for funding the festival. So this is something what is like not normal. Adam told me that he found company for Ultra Music Festival ticket company and that with his money, he help Russell with festival. So this is normal thing.

*See* Sept. 18, 2018 Testimony of Nikola Busljeta at 38:6-13. Hearing this testimony, the jurors were entitled to determine whether Adria Productions was required to comply with the sequestration provision.

Lastly, Worldwide Entertainment argues that even if it did interfere with Adria Productions's business relationships, it was justified in doing so. "To be liable for tortious interference a defendant must have both the 'intent to damage the business relationship and a lack of justification for doing so.'" *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (citing *Alphamed*, 391 F. Supp. 2d at 1165)). Here, Worldwide claims that the Promotional Agreement gave it the authority to interfere in Adria Productions's relationships with vendors in the event of a breach. Moreover, Worldwide claims that because it was engaged in lawful competitive practices to "safeguard its own financial interests," its conduct was privileged. *Id.* at 1339-40 ("So long as the company does not engage in improper conduct, it may take steps to protect its business interests without liability for tortious interference."). Indeed, Jury Instruction No. 20A—Justification—specifically instructed the jurors on the defense of justification.

But given that the jury heard and saw evidence throughout the course of the trial that Worldwide Entertainment sent Adria Productions a notice of default on March 3, 2017 (D.E. 188-1 at 74-77), the same day it sent letters notifying third-party vendors of Adria Productions's default (D.E. 188-1 at 69) before allowing Adria Productions an opportunity to cure, and that two days before the end of the cure period Worldwide Entertainment emailed a Provisional License

Agreement for the production of Ultra Europe 2017 to Joe Basic (Mr. Busjleta's former partner and owner of MPG Live, Adria Productions's competitor) (D.E. 188-1 at 94), it is not outside the realm of possibility that the jurors determined that Worldwide was not justified in having interfered with Adria Productions's business relationships. And certainly does not require that the Court second-guess the jury or set aside its verdict under Rule 50(b).

For these reasons, Worldwide Entertainment's renewed motion for judgment as a matter of law as to Adria Productions's claim for tortious interference with business relationship is DENIED and the jury's verdict will stand.

### (2) Limitation on Liability

Worldwide Entertainment argues that even if Adria Productions is entitled to damages, the damages must be reduced to $10,000 consistent with the limitation of liability provision in the Promotional Agreement. Specifically, the Agreement provides the following:

> **a. Limitation of Liability.** IN NO OCCURRENCE SHALL ULTRA BE LIABLE FOR ANY DAMAGES IN EXCESS OF $10,000, NOR SHALL ULTRA BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES OF ANY KIND OR NATURE WHATSOEVER, WHETHER ARISING UNDER CONTRACT OR TORT OR ANY OTHER THEORY OF LIABILITY, EVEN IF THE POSSIBILITY OF SUCH DAMAGES WERE DISCLOSED TO A PARTY OR COULD HAVE BEEN REASONABLY FORESEEN. IN THE OCCURRENCE OF A BREACH OF THIS AGREEMENT, ULTRA SHALL NOT BE LIABLE FOR ANY SPECIAL CONSEQUENTIAL OR LOST PROFITS DAMAGES.

*See* Promotional Agreement at ¶ 19(a). Adria Productions argues that as an initial matter this argument fails because it was not originally raised in Worldwide Entertainment's Rule 50(a) motion. While the Court agrees with Worldwide Entertainment that the Agreement unambiguously limits the amount of damages, the Court also agrees with Adria Productions that

Worldwide Entertainment cannot now avail itself of this argument. Having reviewed both the transcript of the trial and Worldwide Entertainment's written Rule 50(a) motion, Worldwide did not originally raise this issue. Because "any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based on the same grounds as the original request for judgment as a matter of law prior to the case being submitted to the jury," Worldwide Entertainment cannot now raise Limitation of Liability pursuant to Rule 50(b). *Peer*, 2008 WL 2047978, at *3 (citing *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2006)) (internal quotations omitted).

### (3) Claim for Breach of Contract

As with the tortious interference claim, Worldwide Entertainment argues that judgment as a matter of law should be entered as to Adria Productions's breach of contract claim because Adria failed to prove damages. Under Florida law, to state a claim for breach of contract the party must show: "(1) a valid contract; (2) a material breach; (3) damages." *See Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1366 (S.D. Fla. 2017). At trial, the jury found that Worldwide Entertainment breached the Promotional Agreement, but awarded $0 in damages. Worldwide now argues that the $0 in damages negates the necessary damages element of Adria's breach of contract claim.[3] But Worldwide misunderstands the implications of the jury's verdict. On a renewed motion for judgment as a matter of law, the standard that the Court must apply is whether the non-moving party presented sufficient evidence such that a reasonable jury could find for him on a material element of his cause of action. *Alphamed*, 432 F. Supp. 2d at 1322 (citation omitted). That the jury found $0 in damages does not imply that Adria failed to present evidence of damages, only that the jury chose not to award them. And while Worldwide

---

[3] Worldwide Entertainment also argues that any payments Adria Productions made to Worldwide Entertainment pursuant to the Promotional Agreement were voluntary and thus not recoverable as damages, and that Adria failed to prove that it mitigated its damages. Both Duty to Mitigate and the Defense of Voluntary Payment were submitted to the jurors as instructions Nos. 16 and 16A, respectively. The Court agrees with Adria Productions that these issues were considered by the jury and clearly resolved in Adria's favor.

13

is correct to argue that a zero damages award is, in effect, a judgment for the defendant, Worldwide has not moved pursuant to Federal Rule of Civil Procedure 59(e) to alter the judgment to reflect a defense verdict[4] and the time for doing so has passed.

Worldwide Entertainment's reliance on the jury verdict notwithstanding, the Court notes that Adria Productions sufficiently presented evidence as to damages on its claim for breach of contract. More specifically, Mr. Busljeta testified as to the amount of money expended in promotion of the festival and Worldwide Entertainment introduced Exhibit 90, which documents all of the payments made and owed by Adria to Worldwide since 2012. This evidence is sufficient to allow a reasonable jury to find—at the very least consider—damages on Adria's breach of contract claim. For the reasons stated above, Worldwide Entertainment's renewed motion for judgment as a matter of law as to Adria Productions's breach of contract claim is DENIED.

### B. Worldwide Entertainment's Rule 59 Motion for New Trial

"A new trial should be granted when the verdict will result in a miscarriage of justice." *Tampa Port Authority v. M/V Duchess*, 65 F. Supp. 2d 1303, 1304 (M.D. Fla. 1998). "In a nonjury case, a motion for a new trial should be based upon a 'manifest error of law or mistake of fact' and should only be granted for 'substantial reasons.'" *Id.* at 1305 (international citations omitted). If the alleged error does not affect the substantial rights of the parties, then a new trial is not warranted. *Id.* (citing Fed. R. Civ. P. 61).

### (1) Adria Productions's Tortious Interference Claim

For all of the same reasons discussed above in Section III(A)(1), the Court finds that there is sufficient evidence to support the jury's verdict and damages award on Adria

---

[4] Although Worldwide Entertainment did not move pursuant to Rule 59(e) to alter the verdict with respect to Adria's claim for breach of contract, it did so to reflect prejudgment interest on its claim for breach of contract in a separate motion.

Productions's claim for tortious interference with business relationships. The verdict was not "against the weight of the evidence," nor the damages excessive. *King v. CVS Caremark Corporation*, 163 F. Supp. 3d 1165, 1172 (N.D. Ala. 2016). Most importantly, allowing the verdict to stand will not result in a miscarriage of justice. *Tampa Port Authority*, 65 F. Supp. 2d at 1304. Accordingly, Worldwide Entertainment's alternative motion for new trial as to Adria's tortious interference claim is DENIED.

### (2) Worldwide Entertainment's Claims for Misappropriation of Trade Secrets, Violation of Florida's Computer Abuse and Data Recovery Act, Stored Communications Act, Trademark Infringement, and Unfair Competition

Here, Worldwide Entertainment seeks a new trial as to its claims for the following: (1) misappropriation of trade secrets; (2) violation of Florida's Computer Abuse and Data Recovery Act; (3) violation of the Stored Wire and Electronic Communications and Transactional Recovery Act; and (4) trademark infringement and unfair competition. At trial, Adria Productions moved for judgment as a matter of law on these claims and the undersigned, finding that Worldwide Entertainment failed to prove all the elements of its claims, entered judgment in Adria's favor. Worldwide Entertainment now argues that not allowing the jury to determine such claims resulted in a miscarriage of justice. The Court disagrees.

### (a) Misappropriation of Trade Secrets

To prove a claim of misappropriation of trade secrets under Florida's Uniform Trade Secrets Act, a party must prove that (1) it possessed secret information and took reasonable steps to protect its secrecy; and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained by one who used improper means to obtain it. *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2 1271, 1291 (S.D. Fla. 2001). A trade secret is information that (1) derives actual or potential independent

economic value from not being generally known to, and not being readily ascertainable by proper means of efforts that are reasonable under the circumstances to maintain its secrecy. *Id.* If, however, "the information in question is generally known or readily accessible to third parties, it cannot qualify for trade secret protection." *Id.* (citing *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998)).

Worldwide Entertainment argues briefly that because Mr. Busljeta testified that he sent emails with the past stage designs and gear lists to Worldwide's competitors and because Mr. Faibisch testified that he considered such information to be confidential, that this claim deserved to go to the jury. Not so. As Adria Productions noted in its Rule 50(a) argument, Worldwide Entertainment has the burden of proving not only that it possessed secret information, *but that it took reasonable steps to protect its secrecy*. Here, the Court heard evidence from both parties that the past stage designs (including speakers, lighting, etc.) that were sent to Worldwide's competitors had been seen by the public and that, more importantly, the vendors responsible for putting in the stage designs were not under any nondisclosure agreement as to the designs. Worldwide Entertainment failed to meet its burden to prove all elements of its misappropriation of trade secrets claim and has not now demonstrated how the Court's entry of judgment as a matter of law resulted in a miscarriage of justice. For this reason, Worldwide Entertainment's motion for new trial on its trade secrets claim is DENIED.

### (b) Florida's Computer Abuse and Data Recovery Act and Stored Wire and Electronic Communications and Transactional Records Act

Under Florida's Computer Abuse and Data Recovery Act, it is a violation for a person, who knowingly and with intent to cause harm or loss, to obtain information from a protected computer without authorization and, as a result, causes harm or loss. Fla. Stat. § 668.801, *et seq.* Similarly, to state a claim under the Stored Communications Act, a plaintiff must establish: "(1)

the defendant intentionally accessed without authorization a facility through which an electronic communication service is provided or intentionally exceeded an authorization to access that facility and (2) the defendant obtained, altered, or prevented authorized access to a wire or electronic communication while it is in electronic storage in such system." *See* 18 U.S.C. § 2701; *Stirling Int'l Realty, Inc. v. Soderstrom*, 6:14-cv-1109-Orl-40TBS, 2015 WL 2354803, at *4 (M.D. Fla. May 15, 2015) (citing *Snow v. DirecTV, Inc.*, 450 F.3d, 1314, 1321 (11th Cir. 2006)) (internal quotations omitted).

Worldwide Entertainment submits that its claims for violations of these Acts should have been sent to the jury because it presented evidence that Adria Productions knowingly/intentionally accessed unauthorized information because, prior to accessing the unauthorized information, Adria Productions received a revocation of rights letter. (D.E. 188-1 at 74-77.) While Worldwide Entertainment presented evidence that would potentially support their claim that Adria Productions *knowingly* accessed unauthorized information, Worldwide failed to present any evidence whatsoever that suggests Adria Productions did so with the intent to cause harm/loss or that harm/loss actually resulted, or that Adria Productions actually obtained, altered, or prevented authorized access to said information. Moreover, the Court agrees that the Revocation of Rights letter generally revokes the rights provided in the Promotional Agreement and, in theory, puts Adria on notice that it is no longer entitled to access its email account relating to the festival. However, it is entirely plausible, as Adria argued in its Rule 50(a) motion, that upon attempting to access the account Adria had been using for years and finding that the password was not working, Adria assumed it had mistyped or forgotten their password and requested a password recovery, which, most importantly, was granted by Worldwide. Worldwide Entertainment failed to provide sufficient evidence to support its claims for violations of these

Acts. As there has been no miscarriage of justice, Worldwide Entertainment's motion for new trial as to these claims is DENIED.

### (c) Unfair Competition and Trademark Infringement

Worldwide Entertainment argues that Adria Productions use of the "Ultra" mark, the stylized "U" symbol, and the "Croatia Music Week" mark during a press conference promoting an unaffiliated event constitutes trademark infringement and unfair competition. To establish trademark infringement and unfair competition under both the Lanham Act and Florida common law, Worldwide Entertainment must prove that: (1) Worldwide's marks have priority; (2) Adria Productions used Worldwide's marks in commerce; and (3) Adria Productions use of the marks is likely to cause consumer confusion. *See* 15 U.S.C. §§ 1114, 1125(a); *Pepsico, Inc. v. Distribuidora La Matalgapa, Inc.*, 510 F. Supp. 2d 1110, 1114 (S.D. Fla. 2007); *see also Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003).

As to the first prong, Worldwide Entertainment argues that sufficient evidence was admitted that Worldwide owns the "Ultra" mark and the stylized "U" symbol. More specifically, Worldwide submitted evidence showing that it owned the 2004 U.S. registration of "Ultra Music Festival" and the stylized "U" symbol, and that it created the "Croatia Music Week" mark. Even assuming that Worldwide Entertainment sufficiently demonstrated priority over the contemplated marks, Worldwide has failed to explain how use of the marks at the press conference in Croatia has affected commerce in the United States or satisfied the "substantial effects" test for extraterritorial application of the Lanham Act. The Supreme Court has concluded that the Lanham Act can be extraterritorially applied over disputes involving trademark infringement and unfair competition when: "(1) Defendant is a United States corporation; (2) the foreign activity had substantial effects in the United States; and (3) exercising jurisdiction would not interfere with the sovereignty of another nation." *International Café, S.A.L. v. Hard Rock*

*Café Intern. (U.S.A.), Inc.*, 52 F.3d 1274, 1278 (11th Cir. 2001). Here, Worldwide Entertainment makes no attempt to satisfy the requisite factors (let alone mention them). Instead, as in its motion for summary judgment, Worldwide summarily concludes that because Mr. Faibisch testified to having seen the Croatian press conference on social media the "use in commerce" prong is satisfied. Unfortunately, this is not enough. As such, the Court does not find it necessary to analyze whether the marks are likely to cause consumer confusion. For these reasons, Worldwide Entertainment's motion for new trial as to its trademark infringement and unfair competition claims is DENIED.

### (3) Worldwide Entertainment's Equitable Relief of Specific Performance as to Its Breach of Contract Claims

In addition to seeking monetary damages for its breach of contract claim, Worldwide Entertainment also sought injunctive relief. Having won on its claim for breach of contract, Worldwide argued that it should be awarded a mandatory injunction requiring that Adria Productions comply with ¶ 20 of the Promotional Agreement and assign all intellectual property rights "used, registered or to be registered in the Territory containing 'Ultra' or the 'U' design." Worldwide Entertainment argues that it is entitled to a new trial because the jury determined that the Promotional Agreement was valid, and Adria Productions put forth no evidence to support that it was ambiguous such that the provision requiring assignment of rights would be unenforceable.

Courts are generally "reluctant to grant mandatory injunctions pursuant to Federal Rule of Civil Procedure 65, unless extreme or very serious damage will result in the absence of such an injunction." *Dunkin' Donuts Franchised Restaurants LLC v. Rizvi, Inc.*, No. 07-61308-CIV-ZLOCH, 2007 WL 9701084, at *1 (S.D. Fla. Dec. 13, 2007) (citing 11A Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 2d § 2942 (1995)). Furthermore, "courts are loathe to

engage in detailed supervision of a defendant's future conduct to ensure compliance with a mandatory injunction, especially where the injury complained of can be averted by the issuance of a prohibitory injunction, and the remaining harm is compensable in damages." *Id.* Mandatory injunctions are generally entered only when a "defendant's conduct seriously impinges on issues of public policy." *Id.* At trial, the undersigned determined that he would not issue a mandatory injunction on future conduct (*i.e.*, "to be registered" marks) and instead entered judgment on the claim in favor of Adria Productions. Putting aside Adria Productions's speculative argument about what the jury's verdict "strongly suggests" regarding Worldwide's conduct and the enforceability of the Promotional Agreement, the undersigned finds that the circumstances here do not "seriously impinge on issues of public policy" and therefore maintains that a mandatory injunction is not appropriate. As such, the motion for new trial as to Worldwide Entertainment's claim for injunctive relief based on the Promotional Agreement is DENIED.

## IV. CONCLUSION

For the reasons explained above, Worldwide Entertainment's Motion for Renewed Judgment as a Matter of Law and Motion for New Trial is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 20th of February 2019.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record